❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with Instagram account associated with username "hillsidebam" between August 26, 2025 and December 13, 2022 (Target Account), as further described in Attachment A., which is used by Brandon M. NICHOLS,  which is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. | ) ) ) ) ) |

Case No.  **25-991M(NJ)**

Matter No. 2022R00355

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    9/10/2025 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for 30 ___ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      8/27/2025 @ 11:14 a.m. _____          *Nancy Joseph (signature)*
                                                                                        *Judge's signature*

City and state:    Milwaukee, WI _____          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                                        *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to Be Searched**
**Matter Number 2022R355**

1. This warrant applies to information associated with Instagram account Instagram account associated with username "**hillsidebam**" "Instagram: 46491379"; between August 26, 2025 and December 13, 2022 (Target Account); also associated with "Bam Nichols"; "@hillsidebam"; or https://www.instagram.com/hillsidebam (Figure 1); which is used by Brandon M. NICHOLS,



(Figure 1)

(Target Account), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1 Meta Way, Menlo Park, California.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) from August 1, 2022 to December 31, 2023, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.     All business records and subscriber information, in any form kept, pertaining to the Target Account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment, including any credit card or bank account number and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

6.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

7.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers;

8.      Privacy and account settings, including change history; and

9. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content whether created, uploaded, or shared by or with the Target Account, records, and other information relating to videos including live videos and videos on IGTV, images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata;

C. All content, records, and other information relating to communications sent from or received by the Target Account, including but not limited to:

1. The content of all communications sent from or received by the Target Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Target Account, including dates and times, methods, sources, and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content present;

5. All photographs and images in the user gallery for the account;

6. All location data associated with the account, including geotags;

7. All data and information that has been deleted by the user;

8. All records of Instagram searches performed by the account, including all past searches saved;

9. All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the Target Account and other Instagram users, including but not limited to:

1. Interactions by other Instagram users with the Target Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved, and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account; and

F. All location information, including location history, login activity, information geotags, and related metadata.

Within 14 days of the service of this warrant, Meta. shall deliver the information set forth above via United States mail or courier to: Task Force Officer Aaron Hoppe, 515 West Moreland Boulevard, Waukesha, Wisconsin 53188, or via email to: ahoppe@waukeshacounty.gov (preferred method).

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, in violation of Title 18, United States Code Section 922(o), have been committed by Azjuan K. MERIWETHER, Brandon M. NICHOLS, and other identified and unidentified subjects during the period of July 1, 2022 to April 30, 2023, including, for the Target Account listed on Attachment A, information pertaining to the following matters:

a. any information relating to Azjuan K. MERIWETHER, Brandon M. NICHOLS possession, purchase, or trafficking of machineguns;
b. lists of customers and related identifying information;
c. information related to types, amounts, and prices of machineguns as well as dates, places, and amounts of specific transactions;
d. any information related to sources of machineguns (including names, addresses, phone numbers, or any other identifying information);
e. communications related to machineguns and trafficking machineguns, including electronic communications such as text and instant message;

f.   any information recording Azjuan K. MERIWETHER, Brandon M. NICHOLS schedule or travel;

g.   all bank records, checks, credit card bills, account information, and other financial records;

h.   The identity of the person(s) who created, accessed, or used the Target Account, including records that help reveal the whereabouts of such person(s) and the chronological and geographic context of the access, use or events;

i.   Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

j.   Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

k.   Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

l.   Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, case agents, including ATF, DEA, and Waukesha County Metro Drug Unit, HITDA, may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with Instagram account Instagram account associated with username<br>"hillsidebam" "between August 26, 2025 and December 13, 2022 (Target Account), as further<br>described in Attachment A, which is used by Brandon M. NICHOLS, which is stored at<br>premises owned, maintained, controlled, or operated by Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 25-991M(NJ)<br><br>    Matter No. 2022R00355 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

> See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

> See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(o) | Possession of a machinegun |

The application is based on these facts:

> See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Aaron Hoppe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: 8/27/2025

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter Number 2022R355**

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with Instagram account associated with username "**hillsidebam**" "Instagram: 46491379"; between August 26, 2025 and December 13, 2022 (Target Account); also associated with "Bam Nichols"; "@hillsidebam"; or https://www.instagram.com/hillsidebam (Figure 1); which is used by Brandon M. NICHOLS,



(Figure 1)

(Target Account), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered at 1 Meta Way, Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID. Upon receipt of the information described in Section I of

Page 1

Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-present.  I have been a part of hundreds of state and federal investigations related to drug activity.

3.      I have received extensive training in death investigations, narcotics investigations, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

4.      I have conducted investigations ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

Page 2

5.        I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and have arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

6.        I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I am aware that those that engaged in drug trafficking and firearm trafficking often used these types of devices to access social media accounts to conduct their illegal conduct.  I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7.        I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a

Page 3

variety of formal, informal, and on the job training in the investigation of firearms trafficking and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

8.      This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.  This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

9.      The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

10.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of possession of a machinegun, in violation of Title 18, United States Code Section 922(o), have been committed by involves Azjuan K.

MERIWETHER, Brandon M. NICHOLS, and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.  PROBABLE CAUSE

### A.  BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

11.    Beginning in July 2022, case agents began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin, which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, Brandon M. NICHOLS and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm).   Case agents also determined that members of the ADTO use multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics and firearms throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

12.    On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine and cocaine. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS. The CS indicated that MERIWETHER sells guns, including "ghost guns," which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable.  In addition, CS indicated MERIWETHER

Page 5

sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon. This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

13.    CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area. CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics. CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop."

14.    CS information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS was cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County and Kenosha County during the time of this investigation and the charging of NICHOLS. CS's Waukesha and Kenosha matters have since been dismissed, as consideration for CS's cooperation. After receiving consideration for those charges, CS was criminally charged in Marinette County on a drug related matter. CS again cooperated with law enforcement in a separate investigation for consideration in the Marinette County matter. That matter has since been dismissed as consideration for CS's unrelated cooperation. After all CS's matters were dismissed, CS has continued to cooperate with law enforcement on separate matter in exchange

Page 6

for monetary compensation. CS has not received any payments for his cooperation in NICHOLS's investigation. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

15. Since July 5, 2022, CS and an undercover agent (UC) with ATF engaged in approximately 18 undercover controlled buys with members of the ADTO including MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ ("RICO"), Brandon M. NICHOLS and others. Generally, during the controlled buys of controlled substances and/or firearms the CS placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media. Further firearms were also tested by ATF.

16. Between July 2022 and March 2023, CS and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl also; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys. Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20 firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock

auto-sear devices from the ADTO. One of the Glock Auto-sear devices was obtained from Laron N. KING.

17. During the investigation into the ADTO, Brandon M. NICHOLS was identified as a member of the ADTO.

**B. August 29, 2022 UNDERCOVER TRANSACTION WITH MERIWETHER AND NICHOLS**

18. On August 29, 2022, law enforcement conducted an undercover controlled buy with MERIWETHER. During the undercover controlled buy, CS, and the UC made arrangements to purchase 111.4 grams of fentanyl, one Glock auto rear switch, and a Glock .45 caliber handgun from MERIWETHER using telephone number 414-999-6172. The undercover controlled buy took place at 3716 West North Avenue, Milwaukee, Wisconsin. This location is the address of a barber shop identified "Cuttinup Crew." During the investigation into the ADTO, "Cuttinup Crew" was identified as a location where MERIWETHER is known to frequent. During the transaction, MERIWETHER entered the UC's vehicle, where CS was the front seat passenger. The original transaction was for the Glock auto rear switch, but when MERIWETHER entered the vehicle, he informed the UC that someone was bringing the "switch." During this time, MERIWETHER completed the transaction of fentanyl for $2500 with CS. The UC and MERIWETHER began discussion regarding a handgun that was on MERIWETHER's person. MERIWETHER eventually agreed to sell the handgun, which was identified as a Model 21, Glock .45 Caliber handgun.

19. A short time later a subject, later identified as Brandon M. NICHOLS through social media, arrived at the location. NICHOLS provided MERIWETHER a bag that contained the "switch" and MERIWETHER subsequently completed the transaction with the UC. The

Page 8

suspected controlled substance was weighed and tested. The substance weighed a total weight of 111.4 grams and tested positive for fentanyl. Law enforcement with ATF later test fired the "switch" provided by NICHOLS and MERIWETHER. It was determined that the "switch" converted a semi-automatic firearm into a fully automatic firearm, meaning one pull of a firearm trigger caused the firearm to fire multiple bullets.

20.     Following the undercover drug and gun transaction, law enforcement reviewed social media accounts and phone records. Based on the review of these materials law enforcement located photos of NICHOLS associated with NICHOLS' social media account. These photos were consistent with the subject that arrived during the undercover transaction and provided MERIWETHER with the switch, which was then provided to the UC.

### C.  ARREST OF MERIWETHER IN INDIANA

21.     On December 27, 2022, MERIWETHER was arrested in Indiana after a lengthy vehicle pursuit with Indiana state law enforcement. Case agents learned from law enforcement in Indiana that MERIWETHER was in possession of approximately one pound of heroin, half of pound of methamphetamine, and a quarter of pound cocaine. The narcotics were located in a brown Louis Vuitton bag, which MERIWETHER was in possession of when he exited his vehicle and attempted to flee on foot at the conclusion of the vehicle pursuit. During a search of MERIWETHER's vehicle, law enforcement located two digital scales with a white powdery residue on them, suspected marijuana, several "small diamonds, and two cell phones (iPhones), one of which was linked to the vehicles GPS system showing the vehicle was enroute to an address in Evansville, Indiana. MERIWETHER was subsequently charged in Vermillion County with 16 counts related to the vehicle pursuit and possession of narcotics and paraphernalia. The charges included possession with intent to deliver heroin, possession with intent to deliver

Page 9

methamphetamine, and possession with intent to deliver cocaine. MERIWETHER remained in custody at Vermillion County Jail in Indiana.

22.     Case agents were monitoring recorded jail calls/texts that MERIWETHER was making from the Vermillion County Jail. While in custody MERIWETHER continued to communicate with members of the ADTO and engage in drug and firearm trafficking.

### D.  INDICTMENT OF ADTO MEMBERS AND THREATS TO CS

23.     On April 11, 2023, a federal grand jury in the Eastern District of Wisconsin returned a thirty-one-count indictment against Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, Brandon M. NICHOLS and other members of the ADTO. NICHOLS was indicted in one count of possession of a machinegun, in violation of Title 18, United States Code, Section 922(o). (*United States v. Azjuan MERIWETHER et al*, 23-CR-69).

24.     On April 20, 2023, case agents conducted multiple search warrants and arrested several individuals involved in the MERIWETHER ADTO, including NICHOLS.

25.     On April 21, 2023, case agents were reviewing the jail text messages being sent to and sent by MERIWETHER from the Vermillion County Jail. Case Agents observed a message exchange between MERIWETHER and the phone number 414-731-2254. Based on the investigation into the ADTO, case agents believe this number is used by Leonard PINKSTON, another member of the MERIWETHER ADTO. At 2:23 pm there was an "incoming" message, which started the following exchange.

> PINKSTON: Bro nigga sayin you the police onna net
> MERIWETHER: Smh who
> PINKSTON: I just got on niggas ass. Luh joe brown (Case agents are aware that "Luh Joe Brown" is Jacob FLOWERS. During the investigation, case agent obtained court authorized Instagram records from FLOWERS's account which demonstrated his involvement in the sale of firearms and Glock-auto sear devices to the ADTO. FLOWERS was one of the individuals arrested on April 20, 2023.)

MERIWETEHR: Lmao I was on lil dude ass he scary asab
MERIWETHER: Mfk was scared to sell me smacks n shit
PINKSTON: Yk they snatched him up yesterday
MERIWETHER: Probably cause they went through my Instagram how is that my fault same way they got Bam

26.     MERIWETHER clearly references Instagram when discussing "Bam," who case agents know is a nickname for Brandon NICHOLS, along with discussions on "Luh Joe Brown," Jacob FLOWERS.

27.     Based on this conversation, case agents re-reviewed Instagram records for MERIWETHER that were obtained via search warrant previously.  Case agents observed a message thread between MERIWETHER who had an Instagram username of "thereal_chefdon92" and NICHOLS who has the username of "hillsidebam" (Target Account).

28.     Case agents reviewed the Instagram (with the username "Bam Nichols" (hillsidebam)) (Target Account) and Facebook (with the username Bam Nichols (Hillside Bam)) accounts belonging to NICHOLS.  The Target Account and the Facebook account both have a photo of Brandon M. NICHOLS publicly viewable.  Based on the statements from the jail call, communication between MERIWETHER's Instragram account and account "hillsidebam" account (Target Account), and the photos of NICHOLS, case agents believe both accounts do in fact belong to NICHOLS.  The following is a message exchange between MERIWETHER and NICHOLS were conducted via messenger on Instagram.  The times documented in the Instagram records are in UTC and have been adjusted to CST this affidavit.

29.     On August 27, 2022 at 5:23 pm, MERIWETHER's Instagram account "thereal_chefdon92" sent NICHOLS's account "hillsidebam" (Target Account) the message "So bro stil up north he said he should be in town tomorrow or the day after but he fasho want it."  At

Page 11

7:05 pm, NICHOLS sent "Ok cool." These messages were two days before the undercover controlled buy the Glock auto-sear device.

30. The following exchanged occur on August 29, 2022 between MERIWETHER's Instagram account "thereal_chefdon92" and NICHOLS's account "hillsidebam" (Target Account), the same day of the undercover controlled buy:

> 1:29 pm - MERIWETHER: Wya bro
> 1:29 pm - MERIWETHER: He gone be here at 4
> 1:32 pm – NICHOLS: 414-315-4112 I'll be off at work at 5
> 1:34 pm – MERIWETHER: OK
> 1:51 pm – MERIWETHER: Imma meet you at the shop I gotta hit the road after
> 1:52 pm – NICHOLS: Ok
> 1:52 pm - MERIWETHER: It's the only one left tho right or u git 2
> 1:54 pm – NICHOLS: 1
> 2:05 pm – MERIWETHER: Ok
> 4:55 pm – MERIWETHER: I'm pulling up to the shop bro he finna be there in like 10-15 minutes
> 5:00 pm – NICHOLS: I just got off I'm on my way!
> 5:01 pm – MERIWETHER: Bet

31. Also on August 29, 2022 at 5:22 pm there is an audio call from MERIWETHER 's Instagram account to NICHOLS's Instagram account that lasts less than one minute.

32. Case agents observed additional messages between MERIWETHER's Instagram account "thereal_chefdon92" and NICHOLS's account "hillsidebam" (Target Account) on August 30, 2022. At 10:25 am NICHOLS's messaged "Dawg why whiteboy gave me a fake $100 bill nbs. The other 3 good but one was fake." MERIWETEHR responded "I'm on ass." Then at 10:28 am there was a video chat between MERIWETHER and NICHOLS that last 2 minutes and 45 seconds. At 11:03 am, NICHOLS messaged "He player bro nbs good looking." And at 12:31 pm MERIWETHER messaged "No problem bro." It should be noted, that no fake money was provided by the CS or UC during the undercover controlled buy.

33. The above Instagram messages between MERIWETHER's account "thereal_chefdon92" and NICHOLS's account "hillsidebam" are consistent with the undercover transaction that took place on August 29, 2022 with the UC, CS, MERIWETHER and NICHOLS. The messages demonstrate that NICHOLS knew about the transaction on August 27, 2022, and was actively involved in the planning and participation of the transaction that was completed on August 29, 2022.

34. On April 26, 2024, Honorable Judge Nancy Joseph, authorized a search warrant for the Target Account; which was served on Meta. However, the warrant was rejected by Meta due to an error on the service.

35. Case agents are aware that NICHOLS's criminal matter is now proceeding to jury trial on October 6, 2025 before Honorable Judge Lynn Adelman.

36. On August 25, 2025, case agent reviewed https://www.instagram.com/hillsidebam and observed that Brandon NICHOLS's Instagram account with username "**hillsidebam**" "Instagram: 46491379"; between August 26, 2025 and December 13, 2022 (Target Account); also associated with "Bam Nichols"; "@hillsidebam"; was still active (Figure 1 above). Case agents believe the Target Account still contain evidence of NICHOLS and MERIWEATHER's criminal conduct between August 2022 and December 2022, including who was using and operating the account during this time.

37. Further, based on the investigation into the ADTO, case agents are aware that this ADTO often used social media, including Instagram, to conduct their illegal ADTO activities including obtaining firearms, machineguns and obtaining and selling controlled substances. Based on this knowledge along with the information outlined previously in this affidavit case agents, it is believed that NICHOLS's Instagram account "hillsidebam" (Target Account) contains valuable

Page 13

information that could be used as evidence for the possible crime possession of a machinegun, in violation of Title 18, United States Code Section 922(o).

## BACKGROUND CONCERNING INSTAGRAM[1]

38.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.  Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

39.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

40.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

Page 14

41.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

42.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

43.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

44.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users.  Meta retains this contact data unless deleted by the user and periodically syncs

Page 15

with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

45.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

46.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

47.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

48.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

49.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

50.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

51.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

52.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

53.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

54.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

55.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

56.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

57.     As explained herein, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

Page 18

58.     The stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, voice messages, photos, videos, and documents] are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

59.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, [[messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time)]] may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

60.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

61.     Other information connected to the use of Instagram may lead to the discovery of additional evidence.  For example, associated and linked accounts, stored communications, photos,

Page 19

and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

62. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

63. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## VI.    CONCLUSION

64. Based on the information above, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

Page 20

65.     Based on the forgoing, I request that the Court issue the proposed search warrant.

66.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1.      This warrant applies to information associated with Instagram account Instagram account associated with username "**hillsidebam**" "Instagram: 46491379"; between August 26, 2025 and December 13, 2022 (Target Account); also associated with "Bam Nichols"; "@hillsidebam"; or https://www.instagram.com/hillsidebam (Figure 1); which is used by Brandon M. NICHOLS,



(Figure 1)

(Target Account), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1 Meta Way, Menlo Park, California.

# ATTACHMENT B
## Particular Things to be Seized
## Matter Number 2022R355

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) from August 1, 2022 to December 31, 2023, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the Target Account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment, including any credit card or bank account number and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

6.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

7.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers**;**

8.     Privacy and account settings, including change history; and

9.     Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content whether created, uploaded, or shared by or with the Target Account, records, and other information relating to videos including live videos and videos on IGTV, images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata;

C.     All content, records, and other information relating to communications sent from or received by the Target Account, including but not limited to:

1.     The content of all communications sent from or received by the Target Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.     All records and other information about direct, group, and disappearing messages sent from or received by the Target Account, including dates and times, methods, sources, and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.     All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content present;

5.     All photographs and images in the user gallery for the account;

6.     All location data associated with the account, including geotags;

7.     All data and information that has been deleted by the user;

8.     All records of Instagram searches performed by the account, including all past searches saved;

9.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the Target Account and other Instagram users, including but not limited to:

1. Interactions by other Instagram users with the Target Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved, and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account; and

F. All location information, including location history, login activity, information geotags, and related metadata.

Within 14 days of the service of this warrant, Meta. shall deliver the information set forth above via United States mail or courier to: Task Force Officer Aaron Hoppe, 515 West Moreland Boulevard, Waukesha, Wisconsin 53188, or via email to: ahoppe@waukeshacounty.gov (preferred method).

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, in violation of Title 18, United States Code Section 922(o), have been committed by Azjuan K. MERIWETHER, Brandon M. NICHOLS, and other identified and unidentified subjects during the period of July 1, 2022 to April 30, 2023, including, for the Target Account listed on Attachment A, information pertaining to the following matters:

a. any information relating to Azjuan K. MERIWETHER, Brandon M. NICHOLS possession, purchase, or trafficking of machineguns;
b. lists of customers and related identifying information;

c. information related to types, amounts, and prices of machineguns as well as dates, places, and amounts of specific transactions;

d. any information related to sources of machineguns (including names, addresses, phone numbers, or any other identifying information);

e. communications related to machineguns and trafficking machineguns, including electronic communications such as text and instant message;

f. any information recording Azjuan K. MERIWETHER, Brandon M. NICHOLS schedule or travel;

g. all bank records, checks, credit card bills, account information, and other financial records;

h. The identity of the person(s) who created, accessed, or used the Target Account, including records that help reveal the whereabouts of such person(s) and the chronological and geographic context of the access, use or events;

i. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

j. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

k. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

l. Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, case agents, including ATF, DEA, and Waukesha County Metro Drug Unit, HITDA, may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Page 26